**In re Jason Michael FERGUSON.**

No. 09–05–255 CV.

Court of Appeals of Texas, Beaumont.

Submitted July 6, 2005.

Decided Aug. 11, 2005.

Bruce N. Smith, Smith & Webster, Beaumont, for relator.

Michael S. Ratcliff, Jasper, for real party in interest.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

PER CURIAM.

Relator Jason Michael Ferguson ("Jason") seeks a writ of mandamus compelling the Honorable Joe Bob Golden, Judge of the 1st District Court of Jasper County, Texas, ("Respondent") to grant his motion to transfer venue of a petition to modify in a suit affecting the parent-child relationship, and enter an order transferring venue to Jefferson County, Texas. Respondent has agreed, *sua sponte*, to stay further proceedings at the trial court level pending resolution of this mandamus. For reasons stated below, we conditionally grant relief.

## FACTUAL AND PROCEDURAL BACKGROUND

In his second issue, Jason contends that Respondent abused his discretion by failing to enter the transfer order transferring the proceedings to Jefferson County, Texas, following an evidentiary hearing conducted on April 20, 2005. Jason argues that, pursuant to Tex. Fam.Code Ann. § 155.201(b) (Vernon 2002), the evidence produced at the hearing overwhelmingly supported his contention that D.T.F., the child subject to the modification suit, resided in Jefferson County, Texas, for a six-month period immediately prior to the filing of the modification action. Jason and real party in interest, Hope Lelay Ferguson Hood Durham ("Hope"), were divorced in Jasper County, Texas, on November 21, 1997, in Cause Number 19,654. The divorce decree made provisions for the then-unborn D.T.F., and later modified the decree with regard to visitation of D.T.F. by Jason. Apparently, Hope was named Sole Managing Conservator by the trial court at the time of the divorce and she remained in that capacity up to the day of the transfer hearing.

Subsequent to the 1997 divorce, Hope married Brian Durham. The record reflects that a hand-written instrument dated "July 10, 2003," was apparently filed with the Jasper County District Clerk's Office by Hope. The pertinent portion of this instrument reads as follows:

July 10, 2003

To Whom It May Concern:

reference: cause no 19654

Please change the address in my file to:

1003 Avenue B Apt 14

Nederland, TX 77627

new phone numbers are

home (409) 721–[____]

work (409) 866–[____]

Could you please put these copies of my child support checks into my file?

Thanks

Hope Hood

On November 30, 2004, Jason filed a petition to modify the parent-child rela-

tionship in the Jasper County district court having continuing, exclusive jurisdiction, in Cause Number 19,654. Along with his petition to modify, Jason also filed his motion to transfer. Contained in his motion as "Grounds for Transfer," was the following averment: "The principal residence of the child is in JEFFERSON County, Texas, and has been in that county during the six-month period preceding the commencement of this suit. Venue is proper in that county."

Hope answered suit, and subsequently filed a controverting affidavit on February 23, 2005, and an amended controverting affidavit on April 20, 2005, the day of the hearing. Neither affidavit denied that she and D.T.F. were living in Jefferson County at the time Jason filed the motion to transfer. The affidavits did explain that D.T.F., Hope, Hope's new husband, and another child had "plan[ned]" to move to Jasper County in December of 2004, but due to a life-threatening heart condition involving her new-born baby, the move to Jasper was delayed and would not occur until "the completion of the school year of 2005[.]" In her amended controverting affidavit, Hope stated for the first time that she and her family, including D.T.F., "live in two residents, [sic] and presently we are living in a dual residency of Jasper and Jefferson County." This affidavit further explained that the Jefferson County residence would cease in May of 2005, at which time "in all likelihood, our permanent residence will be maintained in Jasper County, Texas." As previously noted, testimony was taken by Respondent with regard to the motion to transfer. At this hearing, Jason introduced documents indicating that D.T.F. had been enrolled in an elementary school

in Nederland, Jefferson County, Texas, for the school years of 2004 and 2005. There was also testimony from Jason to the effect that D.T.F.'s residence for "the last couple of years" had been in Nederland. Hope, on the other hand, testified that her residence, and that of D.T.F., was Jasper, and that they were "stay[ing] in Nederland while my husband is working," but that any time there is no school and her husband is off from work the family "come[s] back home to Jasper." Hope testified to a particular address in Jasper County that was her residence with that address also used for purposes of filing her income tax return. A copy of a joint income tax return for the tax year 2004 was introduced into evidence displaying the Jasper address. Hope further testified that she and her family had returned to Jasper "every weekend" during the entire two-year period when they were also residing in Nederland. She further indicated that once the 2005 school-year ended the family was relocating to Jasper "permanently." Hope added that in addition to every weekend, she and her family also returned to Jasper on holidays.

Hope's mother-in-law, Cindy Durham, was the next witness and provided essentially the same testimony as Hope; that D.T.F., Hope, and the rest of the family lived at Cindy's home when in Jasper. Cindy agreed that Jasper County was "always" where Hope and her family maintained their residence and that they "moved" to Jefferson County because it was closer to Brian Durham's job. Cindy believed that the total amount of time D.T.F., Hope and her family stayed at Cindy's home during the year was greater than fifty percent.[1]

---

1. Filed with her response to Jason's petition for *writ of mandamus* was a motion for emergency relief to which Hope attached three "exhibits" which were not before the Respon-

dent when he made his ruling. While we recognize that this Court may take judicial notice of its records made part of a mandamus proceeding, any additional documents or

## PREREQUISITES TO MANDAMUS

 Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Daisy Mfg. Co., Inc.,* 17 S.W.3d 654, 658 (Tex.2000) (orig.proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Therefore, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.

## MANDATORY TRANSFER

 Transferring a case to a county where the child has resided for more than six months is a mandatory ministerial duty under section 155.201 of the Texas Family Code. *Proffer v. Yates,* 734 S.W.2d 671, 673 (Tex.1987) (orig.proceeding); *Bollard v. Berchelmann,* 921 S.W.2d 861, 863 (Tex. App.-San Antonio 1996, orig. proceeding). An order transferring or refusing to transfer the proceeding is not subject to interlocutory appeal. Tex. Fam.Code Ann. § 155.204(e) (Vernon 2002). Therefore, mandamus is available to compel mandatory transfer in a suit affecting the parent-child relationship. *Proffer,* 734 S.W.2d at 672; *In re Sanchez,* 1 S.W.3d 912, 914 (Tex.App.-Waco 1999, orig. proceeding).

As the instant cause is not an *original* suit affecting the parent-child relationship, but is instead a request to transfer a suit to *modify* an order issued by a court with continuing, exclusive jurisdiction, Subchapter C of Chapter 155 of the Texas Family Code contains the pertinent statutory provisions. *See* Tex. Fam.Code Ann. §§ 155.201—155.207 (Vernon 2002). *See also* Tex. Fam.Code Ann. § 103.001(a)(1) (Vernon 2002). Section 155.201, entitled "Mandatory Transfer," provides the following under subsection (b):

> (b) If a suit to modify or a motion to enforce an order is filed in the court having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court shall transfer the proceeding to another county in this state if the child has resided in the other county for six months or longer.

Tex. Fam.Code Ann. § 155.201(b).

Additionally, section 155.203 provides additional instruction regarding such transfer proceedings:

> In computing the time during which the child has resided in a county, the court may not require that the period of residence be continuous and uninterrupted but shall look to the child's principal residence during the six-month period preceding the commencement of the suit.

Tex. Fam.Code Ann. § 155.203 (Vernon 2002).

Guidelines for initiating, responding to, and conducting a transfer proceeding are set-out under Tex. Fam.Code Ann. § 155.204 (Vernon 2002). If a timely motion to transfer is filed, any party desiring to contest the motion must file a controverting affidavit denying that grounds for the transfer exist. *Id.* at § 155.204(b). If a controverting affidavit contesting the motion to transfer is timely filed, each party is entitled to ten days' notice of the hearing on the motion and only evidence

---

instruments must also have been made a part of the trial court record. *See* Tex.R.App. P. 52.3(j)(1)(A), (2); 52.7(a)(1) (requiring documents submitted with original proceeding to have been filed in the underlying proceeding). As the three "exhibits" attached to Hope's motion for emergency relief apparently came into existence after the April 20, 2005, hearing, they could not have been made part of the record in the trial court. We are, therefore, precluded from considering them in this original proceeding.

pertaining to the transfer may be taken at the hearing. *Id.* at § 155.204(c), (d).

■ In the instant case, Hope filed her first controverting affidavit on February 23, 2005, and later filed an amended controverting affidavit on April 20, 2005. In his petition for writ of mandamus, Jason argues that the February affidavit cannot be considered a timely filed controverting affidavit because the affidavit does not deny the fact of D.T.F.'s residency in Jefferson County for at least six months prior to the filing of the suit. In support of this proposition, Jason cites two cases: *In re Daly,* 148 S.W.3d 578 (Tex.App.-El Paso 2004, orig. proceeding); and *In re Sanchez,* 1 S.W.3d 912 (Tex.App.-Waco 1999, orig. proceeding). Both cases are distinguishable in that in both cases the parties opposing transfer either failed to file controverting affidavits entirely, or the controverting affidavits filed were clearly untimely under the requirements of section 155.204(b). *See Daly,* 148 S.W.3d at 581; *Sanchez,* 1 S.W.3d at 915.

In our case, Jason admits Hope's February affidavit was timely filed, but asserts that it did not deny D.T.F's residence in Jefferson County. As it appears to be a good-faith effort on Hope's part to controvert Jason's allegation that D.T.F. did not reside in Jasper County at the time of suit, we decline to hold the February affidavit untimely as a matter of law. At any rate, the record contains Hope's amended controverting affidavit filed on the day of the hearing which included the "dual residency" contention. Although Jason objected to Respondent's consideration of the amended affidavit at trial, it is not clear that Respondent was prohibited from considering it. In any event, Jason does not provide argument or authority in his petition for writ of mandamus for excluding consideration of Hope's amended affidavit as a clear abuse of discretion by Respon-

dent. In Hope's response to the petition for writ of mandamus, cases are cited for the proposition that a person's "domicile" is distinct from a person's "residence." Hope's general contention is that while the law permits a person only one "domicile," the law does permit a person to have one or more "residences." However, none of Hope's cases involve application of provisions from the Texas Family Code. As sole managing conservator of D.T.F., Hope had the exclusive right to designate D.T.F.'s primary residence. *See* Tex. Fam.Code Ann. § 153.132(1) (Vernon Supp.2005). As noted above, the record contains a handwritten change of address dated "July 10, 2003," filed with the Jasper County District Clerk's office, which lists the new address in Jefferson County. To counter the effect of this evidence, Hope and Cindy testified that it was always Hope's intention to keep Jasper as her permanent place of residence as shown by the fact of the family's continued weekend, holiday, and summer-time presence in Cindy's Jasper County home.

We do not deny that for purposes of construing other venue provisions contained in various Texas codes and statutes the concept of "dual residency" or of "domicile versus residence" has its place. *See In re Estate of Steed,* 152 S.W.3d 797, 803 (Tex.App.-Texarkana 2004, pet. filed) (citing *Snyder v. Pitts,* 150 Tex. 407, 241 S.W.2d 136, 139–40 (1951)). However, section 155.203 requires the trial court to look to the child's "principal residence" during the six-month period in question. As noted above, the order for which Jason seeks modification was rendered in Jasper County in Cause Number 19,654. Hope's handwritten change of address notice to the Jasper County District Clerk's office referenced it to "cause no 19654." Therefore, Hope's July 10, 2003, notice clearly designated the address listed in Jefferson Coun-

ty as her residence, and as D.T.F.'s residence, as required under the Texas Family Code. *See* Tex. Fam.Code Ann. §§ 105.006(a)(2), (b) & 105.007 (Vernon 2002 & Supp.2005). Unless other written designation by Hope was made subsequent to July 10, 2003, to the Jasper County District Clerk and/or to Jason indicating a "current residence" in Jasper County, the Jefferson County address was D.T.F's "principal residence" for purposes of compliance with standard Texas court orders in suits affecting the parent-child relationship.

We find that Hope's attempt to distinguish the legal concepts of "domicile" and "residence" do not aid her under the particular facts in the record before respondent at the time of his ruling. Recall that Hope's contention at the hearing, and now before us, is that she proved that Jasper County was her, and D.T.F's, permanent place of residence by proving "dual residency." She directs our attention to the case of *In re Estate of Steed*, 152 S.W.3d at 803, for the proposition that a person may have only one domicile, but there may be several residences. *Steed* involved, *inter alia*, determination of the proper venue in a probate matter. *Id.* at 802. We do not decide or even imply that provisions contained in the Texas Probate Code concerning venue have any legal application to venue provisions in the Texas Family Code. Nevertheless, a portion of the discussion in *Steed* illustrates our concern with Hope's proof.

As noted in *Steed*, the general elements proving the legal concept of "domicile" are: 1) an actual residence, and 2) the intent to make it a permanent home, with the word "home" being treated as meaning "a true fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Steed*, 152 S.W.3d at 804 (citing

*Snyder*, 241 S.W.2d at 139). The record before us indicates that the "actual residence" in Jasper where Hope, D.T.F., and the rest of the family stayed on weekends and holidays belonged to Cindy Durham: there was no testimony that Cindy's home was intended to be Hope's permanent residence. Indeed, Cindy's testimony indicated that Hope and her husband were "looking at various homes" over a six or seven month period prior to the hearing. With regard to the Jefferson County address, Hope's affidavits and testimony indicated it was never intended to be her permanent residence but was used merely to facilitate her husband's access to his job in Beaumont. In essence, the record is silent as to any evidence of "permanence" with regard to either the Jefferson County address or the Jasper County address.

■ Although evidence of intent is usually needed in order to prove a permanent residence, intent alone is not sufficient. *See Owens Corning v. Carter*, 997 S.W.2d 560, 570 (Tex.1999). In the instant case, even taking all of Hope's evidence and testimony regarding her *intent* to have Jasper County as her permanent place of residence, the undisputed evidence is that the Jefferson County address was the one Hope designated as her residence with the Jasper County District Clerk's office. The fact that D.T.F. was enrolled in a Jefferson County school until after the hearing date indicates the principal fixed residence for Hope, D.T.F., and the rest of the family for at least six months prior to the filing of Jason's petition to modify was Jefferson County. Documents also before the trial court indicate that on two separate occasions Hope was served with civil process at the Jefferson County address. We decline to embrace the concept of "dual residences," under the facts and circumstances of this case. We therefore find the respondent abused his discretion in his appli-

cation of the facts to the controlling legal principles.

### CONCLUSION

The respondent had a mandatory duty to transfer this suit affecting the parent-child relationship to Jefferson County because D.T.F. had resided in Jefferson County for at least six months prior to commencement of the modification suit. Respondent abused his discretion in denying the motion to transfer. Because Jason does not have an adequate remedy at law, we conditionally grant the mandamus relief requested. We trust that the respondent will vacate its order denying the motion to transfer and transfer this suit to Jefferson County. The writ will issue only if the respondent fails to do so.

WRIT CONDITIONALLY GRANTED.